# EXHIBIT A

# Amazon Seller Management Agreement

Prepared for:
Jay Gall & Ali Althoff

Created by:
Ascend Capventures Inc.



Document Ref: HHZFT-X2WKH-7JQTA-KKD9E

# 1. Services & Deliverables

The Manager agrees that it shall provide the Client with Management services including the skills, guidance, expertise, know-how, and deliverables for which it is commissioned.

As part of this Management agreement, the Manager agrees to the deliverables listed in Schedule A.

| Services (from Manager) | Cost (to Client) |
|---|---|
| Amazon Store Build + FBA/FBM product sourcing | $93,000 |
| Amazon Store Management + Growth | 30% Of Monthly Net Profits |
| Reseller Certificate Fee (Optional) | $150.00 |
| Monthly Software fee (subject to change) | $25.00 |

The packages/service add-ons are given in Annexures attached to this Agreement.

By signing this Amazon Seller Management Agreement, it is the agreement of both parties that the services and deliverables listed above represent an accurate scope of work as defined by the terms of this agreement.

## AMAZON SELLER MANAGEMENT AGREEMENT

This Amazon Seller Management Agreement (this "Agreement"), dated and effective as of the last date identified on the signature page below to this Agreement ("Effective Date"), is entered into by and between Ascend CapVentures Inc., a Wyoming Incorporated company (hereafter referred to as "Manager"), and the individual or entity set forth on the signature page attached hereto (hereafter referred to as "Client"). Manager and Client are sometimes referred to herein individually as a "Party" and collectively as the "Parties".

## BACKGROUND

Document Ref: HHZFT-X2WKH-7JQTA-KKD9E

WHEREAS, Amazon.com is a website that allows users to buy and sell products. Amazon.com uses an infrastructure that permits, buying, selling, storage, and shipping.

WHEREAS, Manager is engaged in providing "Amazon.com seller account management services". Manager desires to provide Client with Amazon.com seller account management services, and Client is willing and desires to retain Manager to provide Amazon.com seller account management services as outlined in this Agreement.

NOW, THEREFORE, for and in consideration of mutual covenants contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties here to, intending to be legally bound, hereby agree as follows:

# AGREEMENT

## 1. MANAGER SERVICES

1.1 <u>Services.</u> The Manager agrees to provide, but is not limited to, the following services to fully prepare, manage, and operate a Amazon.com store on behalf of Client:

- Amazon.com Store Approval Support.

- Reseller Certificate Services Support.

- Product research, sourcing, selecting and listing of products for sale on amazon.com.

- Sourcing Wholesale suppliers on behalf of client.

- Handling customer service, returns, issuing refunds, bookkeeping, and handling all issues that arise concerning Client's Amazon.com seller account including customer claims,

Document Ref: HHZFT-X2WKH-7JQTA-KKD9E

chargebacks, and negative feedback.

- Provide oversight of the store and its financial performance and provide proper billing for account management services as described in Section 2.4.

- In the rare and unlikely event Client's amazon.com store becomes suspended, Manager will handle all duties to reinstate the store for active sales, but there are no guarantees of reinstatement. If amazon.com permanently suspends Client's store for any reason, Manager will build Client another e-commerce store (whether that be another amazon.com store, Walmart Store or other) at no additional cost. The Manager shall take into account the Client's preferences and authorization for building the new e-commerce store after suspension.

The Manager retains the right to provide and use an outside contractor at the Manager's discretion as long as the services are being provided as stated above (the "Services").

1.2 <u>Independent Contractor Status.</u> The Parties are not entering into a partnership or joint venture by virtue of this Agreement. In all matters covered by this Agreement, the Manager will act as an independent contractor. Accordingly, Manager will not be required to devote his full time to representing Client. Managers may perform the same or similar services for others, as well as engage in any other business activities.

1.3 <u>Non-Exclusive Services.</u> Manager's services hereunder shall not be exclusive to Client, and at all times Manager shall be free to perform the same or similar services for others, as well as to engage in any and all other business activities, provided that such other activities do not interfere with Manager's services to Client hereunder. The Client may use his own resources to build his e-commerce store in addition to the Manager's Services, however, it shall not prejudice the Services being delivered by the Manager in any manner whatsoever.

1.4 <u>No Financial Responsibility and Ownership.</u> In no event shall Manager be responsible for payment of any kind or any other obligation under Client's credit cards or working capital, all of which payment obligations shall be solely that of Client. Manager also does not provide financial or tax advice to Client. The Manager shall only deliver managerial services as stated in this Agreement, and in no case be deemed to be the owner of the e-commerce store or part of it for any purposes whatsoever.

1.5 <u>Best Efforts.</u> Manager will service Client in a professional manner and to the best of his abilities according to the industry standard, which shall be without any intentional misrepresentation or/and willful misconduct. The Manager shall not use any resource provided by the Client in a wrongful manner which is not intended by the Client. The Client agrees that the Manager cannot and does not guarantee the outcome of the Services or

generation of a certain amount of income at any time during or after the term of this Agreement.

## 2. CLIENT REQUIREMENTS

**2.1 Account Setup Requirements.** Prior to Manager's performance of the Services outlined above, Client shall assist Manager with establishing a Amazon.com seller account (the "Account") to be owned by Client and prepare and execute the necessary documentation and fulfill all other requirements necessary in order to establish Manager and its representatives as an "authorized user" on the Account, with full access and permissions to the Account.

**2.2 Access to Working Capital.** Client will use best efforts to obtain and maintain, for the duration of this Agreement, credit cards issued through the United States federally insured banking institution or other working capital with a minimum credit line of at least $25,000 USD to be used to purchase goods for resale on Client's amazon.com store. Client shall notify Manager if Client uses this credit/working capital for any reason outside the scope of this agreement. This minimum credit must be maintained and fully accessible to the Manager throughout the duration of the term in order for the buyback guarantee to remain valid. Client must provide the Manager with credit/debit card and billing information for the Manager to fulfill orders and monthly supplier/third party software and Amazon.com professional seller fees. Client shall pay off the credit cards/working capital fully to the extent possible from Amazon.com store revenues within 7 business days after Amazon.com remits payments to Client, typically every two weeks.

**2.3 Initial Service Fee.** Client will pay Manager an initial service fee of $93,000 USD, of which $93,000 is due upon signing of this agreement to initiate Manager's services to build Client's Amazon.com store and obtain Amazon.com store approval, in conjunction with Section 2.1 above. This initial service fee is fully refundable if the client is unsuccessful obtaining approval to become an Amazon.com Seller. Manager is not obligated to initiate any work until this upfront service fee is paid by Client.

**2.4 Ongoing Compensation.** Manager provides ongoing services to maintain and operate Client's Amazon.com store in exchange for a commission share of Net Profits, as defined below. Commission is payable on all net compensation/profits when it is received by Client or by any third Party on Client's behalf minus returns & supplier software cost. Manager will provide the Client with a written statement of account showing the net compensation/profits received by Manager on Client's behalf and the expenses (if any) incurred by Manager under this Agreement. Client's payment to Manager is due upon receipt.

2.5 Optional Payment for Additional Profit Share. After Client's Amazon.com store has been operational for at least 3 months, Client has the option to pay Manager an additional amount to reduce Manager's ongoing compensation commission share by at least 5%. Client may additionally offer to pay Manager an additional amount for another 5% commission share, which Manager has sole discretion whether to accept. However, this amount shall depend on the market price at a given time which the Manager has the discretion to decide by applying the standard market rates. To enact this optional payment to reduce Manager's commission share, Client must submit this notice in writing and submit payment to Manager no less than 30 days prior to enactment, but in all cases the change in Manager's commission share will be enacted at the beginning of the following month after 30 days from Client's written request. The profit percentage in this option may change on the discretion of the Manager depending upon the price of the package purchased by the Client.

2.6 Store Access and Functionality. Client must provide Manager with full access to its Amazon.com account via Amazon.com's User Permissions' to grant Manager "admin access" to the Amazon.com account. Unless Manager provides written consent: (i) at no time shall Client Pause its Store, allow for a Suspension, or place its Amazon account or Store in Vacation Mode, such terms being denied or referenced on the amazon website or in other written materials made available to Client, and (ii) Client shall not allow its Store to remain shut down for more than thirty (30) days during the term of this Agreement.

2.7 Engagement. Client agrees to not engage any other person or entity to act for Client in the same capacity in which Client has engaged Manager for Amazon.com account management services or otherwise. Client shall reasonably inform Manager of inquiries concerning Manager's services so that Manager may advise Client whether the same are compatible with and in the interests of Client's.

2.8 Entity Formation. Client is responsible for any business formation/management concerning its own affairs, including but not limited to: entity formation, obtaining an employer identification number, and obtaining a resale certificate.

## 3. TERM, TERMINATION, AND REFUND OPTION

3.1 Term and Termination. The initial term of this Agreement will be for 36 months to begin once Client's Amazon.com store has been approved and launched with products actively listed for sale. The term shall pause if for any reason the Client's Amazon.com store becomes suspended or no longer active, or if Client is not providing at least $25,000 in working capital monthly for inventory after the 6 month mark since launch, the term will

then continue to run once Client once again has an active e-commerce store operating with products actively listed for sale and sufficient working capital of $25,000. The term will automatically renew for an additional 12 months, unless the Client or Manager provides written notice of termination for any reason with 60 days notice.

3.2 <u>Option to Request Buyback.</u> After the initial 36-month term, if the Client has not made back their initial service fee of $93,000 in their allocated share of Net Profits, Client has the option to request the Manager to buy the Client's amazon.com account store within a 45-day period following the 36th month. To exercise this buyback option, Client must notify Manager of that election in writing. Manager will refund the remaining portion of the initial service fee that was not recovered by Client from any Net Profit earned from Client's Amazon.com store business, provided that (1) Client has not engaged in any act that interferes or interfered with the operation of the Client's Amazon.com store or of the Manager's services or which would be in material breach of this Agreement, including, without limitation, a suspension of Client's Amazon.com store for any reason other than the occurrence of a Prohibited Action, and (2) this Agreement remains in full force and effect at the time Client exercises this refund option. The Parties further agree that under no circumstances shall this refund amount exceed the initial service fee. The Client agrees that this Buyback option begins starting on the first sale of the product on the Amazon.com store and it shall only cover the store price and not the price of any add-on services purchased separately by the Client. In case any inventory remains unsold before the end of this Agreement, it is up to the discretion of the Manager to either buy back the inventory with the business or not. The Client agrees not to dispute or initiate a chargeback in relation to any inventory purchases made by the Manager on behalf of the Client under this Agreement. The Client acknowledges and agrees that any dispute or chargeback initiated in relation to such inventory purchases will constitute a material breach of this Agreement. In the event of such a breach, the Manager shall have the right to immediately terminate this Agreement, without prejudice to any other rights or remedies that the Manager may have under this Agreement or under applicable law. The Client shall also be liable for any costs, expenses, damages, or losses incurred by the Manager as a result of such breach, including but not limited to any fees or penalties imposed by financial institutions or payment processors in connection with the disputed transaction or chargeback.

The Client agrees that any payments made to Ascend Capventures using a credit card through any credit card processing merchant are final and non-refundable. The Client hereby waives any right to initiate a chargeback through their credit card company or financial institution with respect to any such payment. In the event that the Client initiates a chargeback in violation of this clause, the Client shall be responsible for reimbursing Ascend Capventures for any costs, expenses, or fees incurred as a result of the chargeback, including but not limited to, chargeback fees, administrative fees, and legal fees.

Manager guarantees that any inventory purchased via wholesale FBA for Client's business shall be sold and generate an amount of sales that is equal to or greater than the amount spent on the inventory within 90 days of the inventory being listed, and active for sale in Amazon Seller Central FBA. This will require a minimum purchase of 15,000 per batch of inventory. If the inventory does not generate the amount spent on the inventory within the stated 90-day period, Client can request buyback. Manager shall refund the difference to Client and return the remaining inventory to Manager at no additional cost to Client.

3.3 Contingency Clause. In the event that the Client refuses to maintain sufficient inventory in their store, revokes the Manager's access to the store, or prevents the Manager from purchasing goods to sell on the store to generate profit, the Manager shall not be held responsible for any failure to achieve the net profit target for the buyback guarantee. The Manager's obligations under the buyback guarantee shall be suspended until the Client rectifies the aforementioned actions and allows the Manager to perform its duties under this Agreement. If the Client's store becomes deactivated for any reason, the timeframe for the buyback guarantee shall be paused. The Manager's obligations under the buyback guarantee shall resume once the store is reactivated and the Manager is able to perform its duties under this Agreement.

3.4 Force Majeure. Neither Party shall be liable for any failure or delay in the performance of its obligations under this Agreement if such failure or delay is due to an event of Force Majeure. For the purposes of this Agreement, "Force Majeure" means an event beyond the reasonable control of a Party, including but not limited to acts of God, war, terrorism, civil unrest, labor strikes or lockouts, epidemics or pandemics, government actions or orders, natural disasters, or any other events that render the performance of a Party's obligations under this Agreement impossible, illegal, or commercially impracticable. Upon the occurrence of a Force Majeure event, the affected Party shall promptly notify the other Party in writing, describing the nature, extent, and expected duration of the event. The affected Party shall use commercially reasonable efforts to mitigate the effects of the Force Majeure event and to resume the performance of its obligations as soon as practicable. If the Force Majeure event continues for a period of 180 consecutive days, either Party may terminate this Agreement upon written notice to the other Party, without incurring any liability for such termination.

3.5 Client's Sale of Store. If Client decides to sell the store to a buyer at any time during or after the term of agreement, Manager will provide a " transitional period" of 45 days where Manager will provide business plan and educational /transfer services of Amazon operation to said buyer as well as assistance in sourcing a buyer. Manager will be owed 10% commission of the sale of the store.

## 4. NET PROFIT STATEMENT

4.1 Invoice and Payment Terms. The Client shall receive an itemized invoice from the Manager within the initial ten (10) business days of each calendar month (dates subject to revision), delineating the Client's Net Profits and the commission payable to the Manager. Payment to the Manager shall be remitted by the Client within seven (7) business days upon receipt of the invoice.

In the event of delayed payment beyond the seven (7) business day term, a late fee equivalent to 5% of the due amount will be levied on the Client. Non-payment of the invoice within thirty (30) days from its issue date will be deemed a significant breach of contract, resulting in the temporary cessation of the Store operations by the Manager, enacted without prior notification to the Client. Furthermore, if the payment remains

outstanding after the aforementioned 30-day period, the Client's Buyback option will be automatically rescinded without additional notice.

4.2 Definition of Net Profit. 'Net Profit' is defined as the sum of total sales, less the cost of goods sold, less professional fees associated with Amazon.com, and less expenses incurred for supplier or third-party software. This amount is subsequently multiplied by the commission percentage detailed in Section A of this Agreement. Costs associated with returns or unsellable goods are expressly excluded from this definition.

Upon the conclusion of the 36-month of this Agreement, or in the event that the Client chooses to opt out and enact the Buyback clause, a 60-day notice will be provided for unsellable goods within the store. Following this, the Manager retains discretion to either liquidate remaining inventory or purchase it from the Client. In cases requiring liquidation, an extension of three months beyond the 36-month term of this Agreement will be necessitated. The Client acknowledges and consents to the exclusion of products held in the Manager's inventory from the Net Profit calculation. The billing procedure for Net Profit will adhere strictly to the stipulations outlined in this clause.

4.3 Seller Fees and Software Costs. The Amazon.com professional seller fees and supplier/third party software costs are taken into account within the Net Profit calculation before Manager's commission rate as stated in Section A is applied. Amazon.com professional seller fees are outlined on Amazon.com's seller website and are not subject to Manager's control. The supplier/third-party software costs vary, but will not exceed $300 per month and are not guaranteed to remain constant throughout the term. Additional software charges will be sent for client approval.

5. DEFAULT

5.1 Manager Default. Manager will not be liable or deemed in default under this agreement for any failure to perform or delay in performing any of its obligations due to, or arising out of any act not within its control, including, without limitation, unexpected Amazon Seller Central termination or suspension of clients store on Amazon.com. No refunds will be given, however the Client will be provided alternative options such as a new ecommerce store with no upfront commission cost.

5.2 Client Default. Client shall be considered in default and material breach of this contract if it engages or permits any conduct that results in Manager being unable to access Client's Amazon.com account for a period of three (3) days, or does not pay Manager the ongoing commission share earned within thirty (30) days of invoice. Any such breach

would result in either extension or cancellation of the Buyback option which shall be up to the discretion of the Manager. If the Amazon.com store is paused for any reasons, it shall not count towards the Buyback period. This period will activate again once store is live.

## 6. MISCELLANEOUS

**6.1 Authority to Act.** Client authorizes Manager to act for Client by doing the following: product research; listing products for sale; fulfilling orders when products are sold; handling customer service; handling returns; issuing refunds; bookkeeping; and handling all issues that arise concerning Client's Amazon.com account including A to Z claims, chargebacks, and negative feedback.

**6.2 Rescission and Refund.** Client is entitled to a three (3) calendar day rescission period and entitled to cancel the contract. After the three (3) calendar day rescission period has passed the Client will not be entitled to a refund.

**6.3 Assignment.** Neither Client nor Manager has the right to assign this Agreement or any rights or obligations under the Agreement without the express written consent of the other, except that Manager may assign this Agreement to any firm, corporation or other entity of which Manager is an officer, partner, employee, or consultant. In case of such assignment, the Manager shall give due consideration to the Client's interest and provide notice to the Client.

**6.4 No Encumbrances.** Each Party warrants that it is free to enter into and to perform under this Agreement and to grant the rights, options, powers and privileges herein granted, and to perform every service described in this Agreement, and neither Party is a party to any presently existing contract, nor has or will have any obligation, that would interfere with full performance of the terms of this Agreement.

**6.5 Indemnification.** In the event that either Party hereto does not fully perform or cause to be performed any agreement or obligation undertaken by such Party hereunder (the "Indemnitor"), the Indemnitor agrees to indemnify, defend and hold the other Party hereto (the "Indemnitee") harmless from any and all claims, demands, actions, judgments and awards against the Indemnitee by third Parties in connection with such non-performance. In connection with the foregoing indemnity, the Indemnitee agrees to give the Indemnitor prompt written notice of any claim against the Indemnitee. Further, the Indemnitor shall not be liable for such indemnity unless such claim has been adjudicated in a court of competent jurisdiction and reduced to a final adverse judgment, arbitrated pursuant to

any agreement requiring arbitration and resulting in a final binding award, or settled with the Indemnitor's prior written consent, which consent shall not be unreasonably withheld.

6.6 Additional Services. All services outside the scope of this Agreement that are requested by Client and which Manager agrees to perform will be billed at a separate negotiated rate. Client will be notified and must approve in writing additional services before they will be performed, although Manager may not necessarily be able to inform Client in advance of the total cost of such additional services. These additional services include but are not limited to; dropshipping, private label , additional wholesale brands.

6.7 Limitation of Liability. Manager shall not be liable for any incidental, consequential, indirect or special damages, or for the loss of profits or business interruptions caused or alleged to have been caused by the performance or nonperformance of Manager's services. Client agrees that, in the event that Manager is determined to be liable for any such loss, Client's sole remedy against Manager is limited to a refund of payments made by Client for services, less expenses paid to subcontractors or to third parties. Manager is not responsible for errors which result from faulty or incomplete information supplied to Manager by Client. Client also agrees to not seek damages in excess of the contractually agreed upon limitations directly or indirectly through suits by or against other parties. Manager shall not be liable to Client for any costs, damages or delays due to causes beyond its control, expressly including without limitation, unknown site characteristics; changes in policies, changes in terms of service, and viruses.

6.8 Policy Change. The terms and conditions may be amended or modified by the Manager according to the business needs, however, any change or amendment to this Agreement shall be in writing and signed by both Parties.

6.9 Mutual Non Disparagement. The Client agrees to refrain from any disparagement, defamation, libel, or slander of any of the Service, deliverable, Manager or any of their affiliates and agrees to refrain from any tortious interference with the contracts and relationships of any of the Services provided by the Manager. Any negative reviews about the Services, deliverables or the Manager which are not true shall be considered a violation of this Agreement. The Manager also agrees to refrain from any disparaging statements about the Client.

6.10 Disputes and Governing Law. The Parties agree that any dispute regarding this Agreement, and any claim made by Client for return of fees paid to Manager, shall be handled in accordance with applicable State and Federal Laws. This Agreement and the rights and obligations of the Parties hereunder shall be governed by and construed and

enforced in accordance with the laws of Sheridan County in the State of Wyoming applicable to contracts made and to be performed wholly within such state.

6.11 Arbitration. Any controversy or claim arising out of or relating to this Agreement, or the breach hereof, on behalf of the Client shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

6.12 Entire Agreement. This Agreement constitutes the entire agreement between the Parties. Any prior agreements, promises, negotiations, or representations not expressly set forth in this Agreement are of no force and effect. Any amendment to this Agreement shall be of no force and effect unless it is in writing and signed by the Parties.

6.13 Severability. Any provision of this Agreement which is invalid, illegal or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective only to the extent of such invalidity, illegality or unenforceability, and shall not in any manner affect the remaining provisions hereof in such jurisdiction or render any other provision of this Agreement invalid, illegal or unenforceable in any other jurisdiction.

6.14 Independent Counsel. The Parties acknowledge that they had the right and adequate time to have independent legal counsel of their own choosing review and advise on this Agreement prior to execution.

6.15 Counterparts. This Agreement may be executed in one or more counterparts. All such counterparts shall constitute one agreement binding on the Parties notwithstanding that both of the Parties are not signatories to the original or same counterpart. Signatures provided by facsimile or electronic transmission shall have the same force and effect as original signatures and shall be binding upon the Parties. The Agreement shall be considered executed and binding once one of the Parties possesses an Agreement that expresses signatures by all Parties.

7. Incorporation of Terms of Service Clause

**7.1 Agreement to Terms of Service.** In addition to this Service Agreement, the Client agrees to abide by the Company's Terms of Service (ToS), as available on the Company's website at https://www.ascendcapventures.com/. The Client acknowledges and agrees that the ToS constitute an integral part of this Service Agreement.

**7.2 Acceptance.** By signing this Service Agreement, the Client confirms that they have read, understood, and agreed to the ToS. The Client acknowledges that the ToS may be modified from time to time by the Company, and agrees to be bound by such modifications. The Client agrees to regularly review the ToS on the Company's website to be aware of any such changes.

**7.3 Conflict.** In the event of any conflict or inconsistency between the provisions of this Service Agreement and the ToS, the terms of this Service Agreement shall prevail to the extent of such conflict or inconsistency.

By signing below, the undersigned acknowledge reading, understanding, and agreeing to the terms of this Agreement thereby causing it to be executed once signed by all Parties.

**IN WITNESS WHEREOF**, by the execution of both parties below, this consulting agreement is declared valid and will form a part of the Contract in conjunction with any other relevant documents and agreements presented on behalf of either party.

| CLIENT | | ASCEND CAPVENTURES INC |
|---|---|---|
| X: *Jason Gall*   *Ali Althoff* | X: | *(signature)* |
| By: Jason Gall    Ali Althoff | By: | ASCEND CAPVENTURES INC |

Document Ref: HHZFT-X2WKH-7JQTA-KKD9E

Date: 2023-07-12        2023-07-12         Date: 2023-07-12

Document Ref: HHZFT-X2WKH-7JQTA-KKD9E

## Schedule A

As for the Bundle of Walmart, the manager will launch and manage a Walmart business at a 70/30 split (or additional Amazon store). The manager will apply for Walmart seller approval; there is no limit on Walmart seller applications from the manager for clients. Approvals are not guaranteed.

### VIP Bundle PACKAGE

- **70/30 Profit Split**
- **Wholesale FBA & FBM**
- **Done for you Ungating (Exclusive Brand and/or Category Licensing)**
- **Walmart or Additional Amazon Store Included (70/30 Profit Split)**
- **2 Private Label Products**
- **NO Renewal Fees**

**Total Price – $93,000**

Document Ref: HHZFT-X2WKH-7JQTA-KKD9E

# Signature Certificate

Reference number: HHZFT-X2WKH-7JQTA-KKD9E

| Signer | Timestamp | Signature |
|---|---|---|
| **Ali Althoff**<br>Email: alidodds24@gmail.com<br>Sent:<br>Viewed:<br>Signed: | <br><br>11 Jul 2023 19:19:21 UTC<br>12 Jul 2023 14:10:18 UTC<br>12 Jul 2023 14:17:56 UTC | *Ali Althoff*<br><br>IP address: 204.144.212.151<br>Location: Iowa City, United States |
| **Recipient Verification:**<br>✓ Email verified | <br>12 Jul 2023 14:10:18 UTC | |
| **Jay Gall**<br>Email: jaygall4@yahoo.com<br>Sent:<br>Viewed:<br>Signed: | <br><br>11 Jul 2023 19:19:21 UTC<br>11 Jul 2023 22:19:19 UTC<br>12 Jul 2023 14:18:05 UTC | *Jason Gall*<br><br>IP address: 172.58.167.16<br>Location: Chicago, United States |
| **Recipient Verification:**<br>✓ Email verified | <br>11 Jul 2023 22:19:19 UTC | |
| **Will Basta**<br>Email: contracts@ascendcapventures.com<br>Sent:<br>Viewed:<br>Signed: | <br><br>11 Jul 2023 19:19:21 UTC<br>11 Jul 2023 19:19:25 UTC<br>12 Jul 2023 17:37:29 UTC | <br><br>IP address: 103.137.207.46 |

Document completed by all parties on:
12 Jul 2023 17:37:29 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature solution trusted by 40,000+ companies worldwide.

